SO ORDERED: April 04, 2008.

_____
**James K. Coachys**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MAHLON W. CARLOCK, II, | ) | Case No. 07-3790-JKC-7A |
| | ) | |
| Debtor. | ) | |

### ORDER ON TRUSTEE'S SECOND MOTION FOR TURNOVER

This matter comes before the Court on the Chapter 7 Trustee's Second Motion for Turnover against Debtor Mahlon W. Carlock, II a/ka/ Steve Carlock. Following a hearing on February 28, 2008, the Court asked the parties to file briefs on their respective positions and took the matter under advisement. Having reviewed those briefs, the Court now issues the following Order.

1. At one time, Debtor was an attorney engaged in the practice of law as a sole proprietor.

2. In winding down his business in the spring of 2007, Debtor entered into an agreement with the law firm of Smith & Wade for the sale of Debtor's law practice. A letter dated February 9, 2007 from Smith & Wade to Debtor detailed the agreement as follows:

The revenue generated off of the Steve Carlock & Associates client base would be

applied generally along the following lines, assuming for descriptive purposes only, that the business generates $100,000 of revenue per year. The revenue would be applied with 26% going toward the salary of your legal assistant, that is $26,000; 37% or $37,000 going toward the attorney who actually does the work on the file; 23% to you for generating the business; and the balance of 14% or $14,000 to Smith & Wade for overhead.

3.  An email from Debtor to Smith & Wade dated April 9, 2007, confirmed that he agreed to a 23% share of the net revenue generated by Smith and Wade with respect to Debtor's former clients (the "23% Arrangement").[1]

4.  Pursuant to the 23% Arrangement, Debtor transferred his files to Smith & Wade and the firm began generating revenue from them.

5.  Debtor filed a Chapter 7 petition on April 27, 2007.

6.  Debtor has resigned from the practice of law in Indiana.

7.  On June 20, 2007, the Trustee filed a Motion for Turn Over after Notice and Opportunity to Object, seeking, among other things, turnover of Debtor's "accounts receivable and the value of his law practice as he is preparing to close." Debtor did not object to the requested turnover and, on August 7, 2007, the Court granted the Trustee's motion.

8.  On July 26, 2007, Smith & Wade, through Robert A. Smith, sent a memorandum to Debtor stating:

> This will confirm that commencing August 1, 2007, the compensation to flow from Steve Carlock files, as defined in the prior Smith-Carlock agreement, will amount to 20% of the attorneys fees portion of invoices in hand paid by the clients, after first deducting any out-of-pocket expenses incurred by Smith & Wade which were not reimbursed by the client.
>
> \* \* \* \* \*

---

[1] According to the Trustee, Debtor indicated at his § 341 meeting of creditors that his agreement with Smith & Wade is to last 5 years.

>  Smith & Wade will not be deducting the $2,000 per month legal assistant costs as previously agreed to in that the transfer of files phase has now been completed and Smith and Carlock both have now agreed to pay Steve Carlock a net of 20% from attorneys fees paid and received.
>
>  Amended and agreed to per signature and dates below.

9. The memorandum was signed by Debtor and Robert A. Smith on July 27, 2007 (the "20% Arrangement").

10. The Trustee did not consent to, nor did he have knowledge of, the 20% Arrangement.

11. Pursuant to the 20% Arrangement, Smith & Wade has made post-petition distributions to Debtor totaling $5,955.05.

12. On January 22, 2008, the Trustee filed a Second Motion to Turn Over after Notice and Opportunity to Object (the "Second Motion"). In it, the Trustee sought turnover of any amount paid pursuant to the 20% Arrangement, an accounting of all funds that Debtor had received post-petition and full disclosure of Debtor's agreement with Smith & Wade.

13. On February 12, 2008, Debtor objected to the Second Motion, arguing that the amounts paid pursuant to the 20% Arrangement were not property of the estate "in that Debtor had no cognizable legal right to receive any compensation under the July 27, 2007, agreement at the time of filing his case because the contract did not exist then and it was entirely speculative that any former client would need new legal assistance or whether they would use Smith & Wade if they did."

14. Section 541(a) of the Code defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case."

15. As of the commencement of the case, Debtor had a cognizable property interest, as defined by the 23% Arrangement, in any fees paid to Smith & Wade for legal services rendered on

3

behalf of Debtor's former clients on or after April 9, 2007. In fact, Debtor does not dispute that any payment made by Smith & Wade to Debtor pursuant to the 23% Arrangement constitutes "property of the estate." Contrary to the Debtor's argument, however, the 20% Arrangement–which was entered into without the Trustee's consent and is arguably subject to avoidance pursuant to 11 U.S.C. § 546–does not constitute a new, post-petition contract. Rather, the 20% Arrangement explicitly purports to amend the parties' previous agreement. Thus, any amount paid or to be paid pursuant to the 20% Arrangement is also property of the estate.

16.     The Court further disagrees with Debtor's contention that the 20% Arrangement "does not tie the payments to Carlock under the new memorandum of understanding effective August 1, 2007 to the prior agreement." The 20% Arrangement explicitly references the "Steve Carlock files, as defined in the prior . . . agreement."

17.     Finally, the Court disagrees with Debtor's suggestion that to constitute property of the estate, any funds paid pursuant to the 20% Agreement must somehow relate to "pre-filing business." Neither Arrangement supports that distinction. The 23% Arrangement is tied to Debtor's "client base" and contemplates that the percentage will be paid with respect to both existing and future legal matters.

18.     Based on the foregoing, it appears that the Second Motion is well taken. The Court must stop short, however, of granting the Motion at this time as it has serious reservations about the propriety of Debtor's fee-splitting arrangement with Smith & Wade under the Indiana Rules of Professional Conduct. Specifically, the Court is concerned that the 23% and 20% Arrangements may violate Rule 1.5, 5.4 and/or 7.3 of the Indiana Rules of Professional Conduct and, therefore, may not be enforceable on public policy grounds.

19. Unfortunately, the Court has found only a limited amount of guidance on this issue from other jurisdictions. While it is prepared to reach its own decision, the Court instead asks that the Chapter 7 Trustee seek an ethical opinion from the Indiana State Bar Association's Legal Ethics Committee (the "ISBA") as to whether a sale of a law practice under Rule 1.17 of the Rules of Professional Conduct may be structured to provide for a fee-splitting arrangement like the one agreed to here by Debtor and Smith & Wade. Failure to seek such an opinion within 30 days of this Order shall result in the Trustee's Second Motion being summarily denied.[2] The Trustee is further ordered to provide the Court with the copy of his request to the ISBA and of the ethics opinion once it is issued.

20. Upon receipt and review of the ISBA's opinion, the Court will issue a final order with respect to the Second Motion.

###

Distribution:

Jeffrey L. Mastin
Paul D. Gresk
Smith & Wade
UST

---

[2] According to its website, the ISBA will issue an advisory opinion to members upon request based upon "hypothetical facts related to the Committee."